**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| **Plaintiff,** | : | **Case No. 2:03-CR-213** |
| **v.** | : | **Judge Holschuh** |
| **JABROWN PARKS, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

**MEMORANDUM & ORDER**

This matter is currently before the Court on Defendant Jabrown Parks' "motion to include an *actus reus* or criminal conduct requirement, a malice aforethought *mens rea* requirement, and a proximate cause requirement in the 'kill' element of 18 U.S.C. § 2113(e)[1] or, in the alternative, to declare § 2113(e) unconstitutional as applied to him" (Record at 44), and on Defendant's related motion for a bill of particulars on Count 3 of the indictment (Record at 31, 32).[2]  For the reasons stated below, the motion concerning § 2113(e) is granted in part and denied in part.  The motion for a bill of particulars is denied.

---

[1]  18 U.S.C. § 2113(e), part of the bank robbery statute, reads as follows:

> Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or if death results shall be punished by death or life imprisonment.

[2]  Although Defendant Jabrown Parks filed these motions, co-defendants Lavelle Parks and Chaz Frier have been permitted to join in these motions.  The rulings in this Memorandum and Order, therefore, apply also to them.

## I.     Preface

This case involves the interpretation and application of 18 U.S.C. § 2113(e), the penalty enhancement provision of the federal bank robbery statute.  It provides that whoever "kills" any person in connection with a bank robbery "shall be punished by death or life imprisonment."  18 U.S.C. § 2113(e).

Another judge of this Court has recently entered an Opinion and Order dealing with 18 U.S.C. § 1201, the federal kidnaping statute that contains an analogous enhanced penalty provision.  It states, "if the death of any person results, [defendant] shall be punished by death or life imprisonment."  18 U.S.C. § 1201(a)(5).  United States v. Mayhew, No. 2:03-cr-165, 2005 WL 1845171 (S.D. Ohio Aug. 1, 2005).  Unlike the present case, the Government in Mayhew sought the death penalty for the defendant who had kidnaped and allegedly killed his daughter.  Consequently, the Federal Death Penalty Act of 1994 ("FDPA"), 18 U.S.C. §§ 3591-3598, was applicable in that case.  Of significance to the present case, however, is Judge Marbley's conclusion that the language in 18 U.S.C. § 1201, "if the death of any person results, [defendant] shall be punished by death or life imprisonment" does not require that the Government prove criminal intent or *mens rea* in causing the death.  This conclusion was based on the controlling Sixth Circuit case of United States v. Poindexter, 44 F.3d 406 (6th Cir. 1995).

Although I, like Judge Marbley, am required to follow the appellate court's opinion in the Poindexter case, an argument could be made that Congress intended the enhanced penalty provisions of 18 U.S.C. § 2113(e) to apply to those cases in which a defendant murders or kidnaps an innocent person in connection with a bank robbery, and not to a situation in which an accomplice is accidentally killed in a car accident during the attempted getaway.  Such an

argument would be based, in part, on the legislative history of the statute which shows that it was intended to apply to cases in which "murder or kidnapping [is] committed" in connection with a bank robbery.  H.R. No. 1461, 73rd Cong., 2d Sess. (1934)(emphasis added).[3]  As the Tenth Circuit has noted, "the legislative history suggests [18 U.S.C. § 2113(e)] was enacted to combat the multitude of murders and kidnappings occurring during attempts by bank robbers to flee the scene of the crime." United States v. Marx, 485 F.2d 1179, 1186 (10th Cir. 1973).

The Sixth Circuit in Poindexter, however, using Black's Law Dictionary, contrasted the word "kill" with the word "murder" and concluded that because the statute in question does not say "murder," no criminal intent or *mens rea* is required.  The Court bolstered its conclusion "by the fact that at the time § 2113(e) was enacted, the common law felony murder doctrine was well-established." Poindexter, 44 F.3d at 409.  It is apparent, therefore, that the Sixth Circuit regards § 2113(e) as a felony murder statute, and there is substantial authority that proof of the defendant's intent to commit the predicate felony offense is sufficient to satisfy a *mens rea* requirement for the death in question.  In the opinion that follows, in accordance with Poindexter, § 2113(e) will be considered a specific felony murder statute.

Judge Marbley's opinion in Mayhew is also significant with respect to one other issue that is relevant to the present case.  He concluded that while the Government need not prove intent to cause a person's death, the Government is nevertheless required to prove that the defendant's own conduct was a proximate cause of the person's death.  This proximate cause requirement, as it applies to the facts in the present case, is also discussed in the opinion that

---

[3]  The report of the Senate Judiciary Committee used the phrase "homicide or kidnaping." S.R. No. 537, 73rd Cong. 2d Sess. (1934).

3

follows.

## II.     Background

On December 18, 2003, a grand jury indicted Lavelle Parks, Jabrown Parks, and Chaz Frier.  Count 3 of the indictment alleges that on December 2, 2003, the three Defendants:

> . . . did take by force and violence, or by intimidation, from the person and presence of another, approximately $5,347.00, belonging to and in the care, custody, control, management, or possession of First Federal Savings and Loan, 182 West Broad Street, Pataskala, Ohio, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation, and in so doing, did cause to be put in jeopardy the lives of bank employees by means and use of a dangerous weapon, that is a firearm and further, in committing such offense or in attempting to avoiding [sic] apprehension for the commission of such offense, defendants LAVELLE PARKS, CHAZ FRIER and JABROWN PARKS, did kill Daryl A. Williams, II.
>> In violation of 18 U.S.C. §2113(a), (d) & (e) and § 2.

Daryl A. Williams, II, the deceased, was allegedly a participant in the armed robbery. He, Chaz Frier, and Jabrown Parks allegedly robbed the First Federal Savings and Loan at gunpoint.  They then sped away in a car driven by Lavelle Parks.  An eyewitness alerted the Pataskala Police Department and a high speed chase ensued.  Eventually, the getaway car crashed into two other vehicles.  Williams, who was not wearing a seat belt, was ejected from his seat and was killed instantly when the getaway car rolled over and landed on top of him.

## III.    Motion re: Elements and Constitutionality of 18 U.S.C. § 2113(e)

As noted above, Defendants were indicted for violations of 18 U.S.C. § 2113(a),(d), and (e), as well as aiding and abetting the commission of those crimes in violation of 18 U.S.C. § 2. Section 2113 reads, in pertinent part, as follows:

> **(a)** Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union,

or any savings and loan association; or

Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny–Shall be fined under this title or imprisoned not more than twenty years, or both.

**(b)** Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $1,000 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined under this title or imprisoned not more than ten years, or both; or

Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $1,000 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined under this title or imprisoned not more than one year, or both.

**(c)** Whoever receives, possesses, conceals, stores, barters, sells, or disposes of, any property or money or other thing of value which has been taken or stolen from a bank, credit union, or savings and loan association in violation of subsection (b), knowing the same to be property which has been stolen shall be subject to the punishment provided in subsection (b) for the taker.

**(d)** Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined under this title or imprisoned not more than twenty-five years, or both.

**(e)** Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or if death results shall be punished by death or life imprisonment.

18 U.S.C. § 2113.

The target of the pending motions is subsection (e), which was written as a penalty

enhancement provision.  Congress contemplated that, during the sentencing phase of the trial, the judge would determine, by a preponderance of the evidence, whether someone had been killed in connection with an offense described in § 2113.  If so, the defendant would be subjected to an increased penalty of death or life imprisonment.

In Apprendi v. New Jersey, 530 U.S. 466 (2000), however, the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." Id. at 490.  The statutory maximum penalty for bank robbery is twenty years.  See 18 U.S.C. § 2113(a).  However, if someone is killed in connection with that robbery, the penalty increases to death or life imprisonment.  See 18 U.S.C. § 2113(e).  The parties agree that this situation falls squarely within Apprendi.  Therefore, the fact that someone is alleged to have killed another person in connection with a bank robbery is no longer a factor for the judge to consider at sentencing; it is a fact that must be charged in the indictment, tried to a jury, and proved beyond a reasonable doubt.  See United States v. Rebmann, 321 F.3d 540, 542 (6th Cir. 2003)(interpreting a similar "if death results" provision in 21 U.S.C. § 841(b)).

Defendant Jabrown Parks has filed a motion seeking to incorporate a "malice aforethought" *mens rea* requirement, an *actus reus* requirement, and a proximate cause requirement into § 2113(e).  The other Defendants have joined in this motion.  Basically, Jabrown Parks argues that since he was not driving the getaway car, engaged in no conduct that proximately caused the fatal car accident, and certainly did not intend to kill Daryl Williams, he

should not be held criminally liable for Williams' death.[4]  In the alternative, Jabrown Parks moved the Court for an order declaring subsection (e) unconstitutionally vague as it applies to him.  He claims that it violates his right to due process, because it fails to draw a causal nexus between his conduct and Williams' death.  He also claims that the application of a strict liability statute to a common law crime deprives him of due process.

Defendants urge the Court to compare 18 U.S.C. § 2113(e) -- which imposes a penalty of death or life imprisonment on a bank robber who kills someone in connection with the robbery -- with the federal felony-murder statute, 18 U.S.C. § 1111(a).[5]  The felony-murder statute defines murder as "the unlawful killing of a human being with malice aforethought," but goes on to state that "[e]very murder . . . committed in the perpetration of . . . any . . . burglary, or robbery . . . is murder in the first degree."  18 U.S.C. § 1111(a).  First degree murder "within the special maritime and territorial jurisdiction of the United States  . . .  shall be punished by death or by imprisonment for life."  18 U.S.C. § 1111(b).

Defendants argue that while both statutes impose penalties of death or life imprisonment, 18 U.S.C. § 1111(a) requires the Government to prove "malice aforethought," an *actus reus*, and proximate cause, but § 2113(e) does not.  Defendants claim that this raises numerous constitutional concerns.  They claim that, read literally, § 2113(e) is a strict liability statute that

---

[4]  The Government, on the other hand, contends that Parks' knowing and intentional involvement in the armed bank robbery and attempted getaway is enough to hold him criminally liable under § 2113(e) for Williams' death.

[5]  The felony-murder statute describes murder in the first degree and murder in the second degree that occur within the special maritime and territorial jurisdiction of the United States.

7

is being applied to a non-regulatory criminal offense.  Defendants argue, however, that the Court can -- and should -- avoid these constitutional questions by reading into § 2113(e) a "malice aforethought" *mens rea* requirement, an *actus reus* or criminal conduct requirement, and a proximate cause requirement, making it consistent with the federal felony-murder statute.  See Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. and Constr. Trades Council, 485 U.S. 568, 575 (1988)("where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.").

For several reasons, the Court sees no need to reconcile § 2113(e), a specific felony-murder statute, with § 1111(a), the general felony-murder statute.  As an initial matter, Defendants' attempts to distinguish the general federal felony-murder statute from the common law are unavailing.  At common law, one who caused the death of another while committing a felony was held criminally liable for that death even though he did not intend for death to result. See United States v. Tham, 118 F.3d 1501, 1508 (11th Cir. 1997).  Intent to commit the underlying felony was sufficient to presume intent to kill.  The general federal felony-murder statute, 18 U.S.C. § 1111(a), codifies this common law principle with respect to various crimes, one of which is robbery.  In order to convict someone under § 1111(a), the Government need not prove that the defendant intended to kill the deceased.  The fact that the death, even if accidental, resulted from the commission of the enumerated felony is sufficient to impute the requisite "malice aforethought."  See Tham, 118 F.3d at 1508 ("Accordingly, to be guilty of first-degree murder by virtue of the federal felony murder rule, the defendant need only have intended to commit the underlying felony; no other *mens rea* is required."); United States v. Flores, 63 F.3d

8

1342, 1371 (5th Cir. 1995), cert. denied, 519 U.S. 825 (1996); United States v. Antelope, 430 U.S. 641, 644 (1977)(proof of premeditation and deliberation is not required under the felony-murder component of § 1111).  As the Second Circuit explained in United States v. Thomas, 34 F.3d 44, 48 (2d Cir. 1994), the element of malice aforethought, for purposes of § 1111(a), can be satisfied in several ways, including a showing that the killing was committed in connection with a robbery.

Defendants have cited to no case in which a felony-murder statute, federal or state, has been held unconstitutional simply because intent to kill is presumed from intent to commit the underlying felony.  In fact, as the Eighth Circuit noted in Perkins v. Grammar, 838 F.2d 294, 295 (8th Cir. 1988), "the constitutionality of felony murder statutes is well settled."  See also Armenia v. Dugger, 867 F.2d 1370, 1373 (11th Cir. 1989)(noting that despite scholarly criticism of felony-murder statutes, the courts have upheld their constitutionality).

Furthermore, the constitutional concerns cited by Defendants with respect to § 2113(e) have not been recognized by the courts.  As Defendants acknowledge, Congress has enacted numerous statutes that impose penalties of death or life imprisonment "if death results" from the commission of a felony.[6]  Like § 2113(e), none of these statutes contains an express *mens rea* requirement.  Defendants, however, note that in United States v. Rebmann, 226 F.3d 521, 525 (6th Cir. 2000), overruled on other grounds, United States v. Leachman, 309 F.3d 377 (6th Cir. 2002), the Sixth Circuit expressed, in dicta, some concern over the constitutionality of  21 U.S.C.

---

[6]  See, e.g., 18 U.S.C. § 2119(3); 18 U.S.C. § 844(I); 18 U.S.C. § 2118(c)(2); 18 U.S.C. § 34; 18 U.S.C. § 241; 18 U.S.C. § 242; 18 U.S.C. § 245(b); 18 U.S.C. § 247(d)(1); 18 U.S.C. § 1365(a)(2); 18 U.S.C. § 1716(j)(3); 18 U.S.C. § 1864(b)(1); 21 U.S.C. § 841(b)(1)(A); and 21 U.S.C. § 960(b).

§ 841(b)(1)(A), which provides increased penalties "if death results" from the distribution of drugs, but omits any mention of intent. The Court in Rebmann, however, recognized that Congress has the authority to create strict liability crimes, and noted that the defendant had not challenged the constitutionality of the statute. See 226 F.3d at 525. See also United States v. United States Gypsum Co., 438 U.S. 422, 437 (1978)(noting that while strict liability offenses are generally disfavored, they "are not unknown to the criminal law and do not invariably offend constitutional requirements.").

Defendants have pointed to no case that requires a finding of intent before a defendant can be subjected to increased penalties "if death results" from the commission of a felony. Furthermore, as discussed in greater detail below, the Sixth Circuit has already explicitly held that a defendant may be convicted under § 2113(e) and sentenced to death or life imprisonment without a showing that the defendant intended to kill the deceased. See United States v. Poindexter, 44 F.3d 406, 409 (6th Cir.), cert. denied, 514 U.S. 1132 (1995).

### A. *Mens Rea*

With respect to Defendants' request concerning the inclusion of a *mens rea* requirement, the Government argues that this case is governed by Poindexter. The Court must agree. In Poindexter, two brothers were charged with several offenses, including armed bank robbery. They were also charged under 18 U.S.C. § 2113(e) because after the robbery, as they led police on a high speed chase, defendants were involved in a collision; the innocent driver of the other car was severely injured and later died. With respect to § 2113(e), the district court instructed the jury that "the government need not show that a defendant intended to kill the person, but merely that he intended to avoid apprehension, and by his acts in avoiding or attempting to avoid

10

apprehension, caused the person's death."  44 F.3d at 408.  The defendants were convicted and

sentenced to terms of life imprisonment plus twenty-five years.

On appeal, defendants argued that the district court erred in instructing the jury that the

government did not need to prove that they intended to kill the driver of the other car.  The Sixth

Circuit, however, found no error in the district court's instruction.  It noted:

> Black's Law Dictionary explains that "to kill" is "[t]o deprive of life; to destroy
> the life of an animal or person." . . . The common understanding of the word
> "kill," in contrast with the term "murder," which is defined as "[t]he unlawful
> killing of a human being by another with malice aforethought, either express or
> implied," does not include an element of scienter.  Because the plain language of
> the statute says simply "kills," and not "intentionally kills" or "murders," the
> settled principles of construction direct us to conclude that the legislature did not
> intend to add an additional scienter requirement to the killing component of the
> crime. *Cf.* 18 U.S.C. § 1111(a) ("Murder is the unlawful killing of a human being
> with malice aforethought.").
>
> This conclusion is bolstered by the fact that at the time § 2113(e) was enacted, the
> common law felony murder doctrine was well-established. *See generally*, LaFave
> & Scott, Substantive Criminal Law, § 7.5 (1986).

Poindexter, 44 F.3d at 408-409 (internal citations omitted).  See also United States v. Allen, 247

F.3d 741, 782 (8th Cir. 2001)(citing Poindexter and holding that a conviction under § 2113(e)

"does not require an additional finding of specific intent to kill"), vacated on other grounds, 536

U.S. 953 (2002).  Defendants concede that Poindexter specifically held that the government need

not prove that a defendant possessed a specific *mens rea* to "kill."  They argue, however, that

because Poindexter was decided before Apprendi, the holding in Poindexter is now of limited

value.  The Court disagrees.

As noted earlier, Apprendi requires that any fact that increases the penalty for a crime

beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a

reasonable doubt.  However, the Court is not required to attach a *mens rea* component to the

11

enhancement factor.  The Sixth Circuit addressed this issue in United States v. Villarce, 323 F.3d 435 (6th Cir. 2003).  The defendant in that case was convicted of conspiracy to distribute, and possession with intent to distribute, at least 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1).  Villarce argued that while he knew that some marijuana was going to be delivered to his house, he was "surprised" at the amount that actually arrived.  Id. at 438.  Pre-Apprendi, drug quantity was a factor to be considered by the judge during the sentencing phase; however, because the quantity of drugs can increase a defendant's sentence beyond the prescribed maximum, drug quantity is now a factor that must be determined by a jury.  On appeal, Villarce argued that a *mens rea* should be attached to every element of the crime, including drug quantity.  Since there was no evidence that he agreed to, or intended to, distribute at least 100 kilograms of marijuana, he claimed that the evidence was insufficient to support his conviction.  The Sixth Circuit rejected this argument, holding, "the drug quantity element of the offense is entirely independent of the *mens rea* requirement.  At least six of our sister circuits have agreed that Apprendi does not require proof of knowledge or intent with respect to drug type and quantity."  Villarce, 323 F.3d at 439 (internal citations omitted).   While Villarce involved a different statute, the same reasoning applies with equal force to other statutes, including §2113(e).[7]  In short, Apprendi does not undermine the Sixth Circuit's holding in

---

[7]  See e.g., United States v. Nichols, No. 01-1215, 2002 WL 511731 at **3 (10th Cir. April 5, 2002)(rejecting defendant's argument that because Apprendi elevates "resulting death" to the level of an element, the Government must prove that he engaged in the conspiracy "knowing" that death would result); United States v. McVeigh, 153 F.3d 1166, 1195 (10th Cir. 1998), cert. denied, 526 U.S. 1007 (1999)("[E]ven if the phrase 'if death results' were to be construed as an element of the offense rather than a sentencing enhancement, it would not be an intent element but only an element of factual consequences.  Nothing in § 2332a(a) links the 'if death results' language of the statute to any scienter whatsoever.").

Poindexter.  Because this Court is bound by the Sixth Circuit's decision in Poindexter, the Government is not required to prove that Defendants intended to kill Daryl Williams.

Parks is correct that criminal liability will not generally attach absent the existence of a certain mental state, or *mens rea*.  See Dennis v. United States, 341 U.S. 494, 500 (1951)("[t]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence").  Strict liability offenses are generally disfavored, particularly with respect to common law crimes.  See Morissette v. United States, 342 U.S. 246, 265 (1952).  Therefore, where Congress fails to expressly include intent as an element of a crime, courts have sometimes read an intent requirement into the statute.  See United States v. McVeigh, 153 F.3d 1166, 1193 (10th Cir. 1998), cert. denied, 526 U.S. 1007 (1999); Morisette, 342 U.S. at 263.  See also  United States Gypsum Co., 438 U.S. at 437 ("the holding in Morissette can be fairly read as establishing, at least with regard to crimes having their origin in the common law, an interpretive presumption that *mens rea* is required.").  In Morissette, the Supreme Court observed:

> Neither this Court nor, so far as we are aware, any other has undertaken to delineate a precise line or set forth comprehensive criteria for distinguishing between crimes that require a mental element and crimes that do not. We attempt no closed definition, for the law on the subject is neither settled nor static.

342 U.S. at 260.

Today, 50 years later, there still is no criteria for determining when a criminal intent is required and when it is not.  It is well established, however, as noted earlier, that felony-murder statutes nevertheless have been widely recognized.  While those statutes require a *mens rea* element for the underlying crime, none is required to establish the enhanced punishment when death results.  In any event, and regardless of any general law on the subject, the established law in this Circuit is that an intent to kill a person is not required for a conviction under § 2113(e).

13

Poindexter, 44 F.3d at 408-09.

To summarize, in order to obtain convictions of Defendants in the present case under §

2113(e), the Government need not prove that Defendants intended to kill Daryl Williams.  This

brings us to Jabrown Parks' next claim -- that the Court should read *actus reus* and proximate

cause requirements into the "kill" provision of § 2113(e) in order to avoid declaring the statute

unconstitutional on due process grounds.

### B.      *Actus Reus* and Proximate Cause

#### 1.      *Actus Reus*

An *actus reus* is defined as "a wrongful deed which renders the actor criminally liable if

combined with *mens rea*."  Black's Law Dictionary 36 (6th ed. 1990).  There is no need for the

Court to read an *actus reus* requirement into § 2113(e).  It already exists.  Again, the statute

reads:

> Whoever, in committing any offense defined in this section, or in avoiding or
> attempting to avoid apprehension for the commission of such offense, . . . kills
> any person, or forces any person to accompany him without the consent of such
> person, shall be imprisoned not less than ten years, or if death results shall be
> punished by death or life imprisonment.

18 U.S.C. § 2113(e).  The "wrongful deed" set forth in subsection (e) is the "killing" or "forced

accompaniment."  In order to obtain convictions under § 2113(e), the Government must prove

that Defendants "killed" Daryl Williams.

The parties agree that Daryl Williams was "killed" during a fatal car crash that took place

during the attempted getaway.  The only real question is whether, under the circumstances

presented here, Defendants can be held criminally liable for Williams' death, which was clearly

accidental.  The Government has cited to no case, and this Court has been unable to find one, in

14

which a defendant was subjected to the increased penalties under § 2113(e) because an accomplice was accidentally killed during the course of an attempted getaway.

While there is certainly no unanimity among courts that have considered the application of the felony-murder doctrine in cases in which the person who was killed was an accomplice of the defendant,[8] the Sixth Circuit has held that § 2113(e) does apply when the defendant kills a co-felon. In United States v. Etheridge, 424 F.2d 951 (6th Cir. 1970), the Court applied the statute where the defendant had killed a bank robbery co-conspirator to keep him from talking to the F.B.I., thus "avoiding or attempting to avoid apprehension for the commission" of the bank robbery.

Because the Sixth Circuit has held that § 2113(e) applies when bank robbers accidentally kill someone while fleeing the scene of the robbery, regardless of a lack of criminal intent to kill (Poindexter), and that § 2113(e) applies when the person killed was not an innocent victim but a co-conspirator who helped rob the bank (Etheridge), the Court concludes that § 2113(e) may be applied to the facts of this case. This does not, however, answer the other question raised by Jabrown Parks – is the Government required to prove that his conduct during the high speed chase proximately caused Daryl Williams' death?

### 2. Proximate Cause

Defendants urge the Court to read a proximate cause requirement into § 2113(e). In the Court's view, this is the key issue. The Court agrees that Defendants cannot be held criminally liable for Williams' death, or be subjected to the increased penalties set forth in § 2113(e), unless

---

[8] See Martin J. McMahon, Annotation, Application of the Felony-Murder Doctrine Where Person Killed Was Co-Felon, 89 A.L.R. 4th 683 (1991).

15

the Government proves that their conduct during the high speed chase proximately caused Williams' death.  As the district court instructed the jury in Poindexter, in order to obtain a conviction under § 2113(e), the Government must show that the defendant "intended to avoid apprehension, and *by his acts* in avoiding or attempting to avoid apprehension, *caused* the person's death."  44 F.3d at 408 (emphasis added).

Proximate cause, in this context, exists when the conduct in question plays a substantial part in bringing about or actually causing the death of another person.  In the Court's view, proximate cause can be fairly easily established with respect to Lavelle Parks.  He was driving the getaway vehicle when the fatal crash occurred.  A jury therefore could reasonably find that Lavelle Parks' reckless driving was the proximate cause of Williams' death.  Proximate cause, however, is not so easily established with respect to Jabrown Parks and Chaz Frier, who were only passengers in the getaway vehicle.  Jabrown was seated in the passenger side of the front seat; Chaz Frier and Daryl Williams were seated in the back.

Jabrown Parks and Chaz Frier claim that they should not be held criminally liable for Williams' death because they engaged in no individual conduct that proximately caused the fatal accident.  In support of this claim, they cite to United States v. Nelson, 920 F. Supp. 825 (M.D. Tenn. 1996).  In that case, a security guard shot and killed one of two bank robbers during the course of the robbery.  The surviving robber, Yohann Nelson, was indicted on four charges.  He moved to dismiss the count charging him with a violation of 18 U.S.C. § 2113(e).  He claimed that the statute was unconstitutionally vague as applied to him, because it failed to draw a causal nexus between his conduct and the death of the other robber.  The district court agreed, noting that nothing that Nelson did proximately caused the death of his accomplice.  The court rejected

16

the government's theory that "Nelson committed a felony, someone died, hence criminal liability." 920 F. Supp. at 829-30.

This Court believes that the district court in Nelson correctly held that there are some situations where the lack of any causal connection between the defendant's conduct and the death of another person is so obvious that it arguably would be unconstitutional to hold the defendant criminally liable. A defendant should not be subjected to the severe penalties of death or life imprisonment unless the Government establishes, by proof beyond a reasonable doubt, that the defendant's own conduct was a proximate cause of another person's death.

The fact that Jabrown Parks and Chaz Frier were not driving the car is not dispositive on the issue of proximate cause. It is not necessary for the Government to prove that their conduct alone was the direct and immediate cause of Williams' death. In Poindexter, both defendants were held criminally liable under § 2113(e) for the death of the driver of the other car, even though it can be assumed that only one defendant was actually driving the getaway car that caused that fatal crash.[9]

The Government impliedly concedes that it might not be easy to prove that Jabrown Parks and Chaz Frier, as passengers in the escape vehicle, engaged in specific direct conduct that proximately caused Daryl Williams' death. The Government argues, however, that this does not matter, because they are also charged with aiding and abetting the commission of the crime under 18 U.S.C. § 2. Therefore, according to the Government, even if the jury would find that

---

[9] There is no indication in Poindexter that the passenger in the getaway car raised an issue of proximate cause in the district court or the court of appeals. The Court's ruling, therefore, was confined to the issue of criminal intent.

17

they did not act as principals in the "killing" of Daryl Williams, they can nevertheless be punishable as principals in their capacity as aiders and abettors of the driver's conduct that caused the fatal collision.

In support of its argument, the Government cites United States v. Jones, 678 F.2d 102 (9th Cir. 1982). In that case, Chippy Jones and three others robbed a bank. During that robbery, one of Jones' accomplices shot and killed a bank security guard. Jones was convicted and sentenced on charges of aiding and abetting violations of 18 U.S.C. §§ 2113(a) and (e). On appeal, he argued that because he did not fire the shot that killed the security guard, he should not be subject to the more severe punishment mandated by subsection (e). The court rejected his claim that the aiding and abetting provision of § 2 was inapplicable to § 2113(e), and that the more severe punishment must be reserved for the perpetrator of the killing. Id. at 105.

The Government, however, fails to point out that the Ninth Circuit, in Jones, went on to hold that in order for Jones to be convicted of aiding and abetting the killing of the security guard, he had to aid and abet each essential element of the crime. Therefore, the jury must find not only that he aided and abetted the commission of underlying robbery, but also that he aided and abetted in the killing itself. "It is not enough for the jury to find that the defendant aided and abetted a bank robbery in which a killing occurred." Id. at 106. Likewise, in United States v. Dinkane, 17 F.3d 1192, 1196-97 (9th Cir. 1994), the Ninth Circuit held that in order to convict a getaway driver of aiding and abetting an armed bank robbery under § 2113(d), a provision parallel to § 2113(e), the government must show that the defendant knowingly and intentionally aided and abetted the commission of not only the underlying offense of bank robbery, but also the commission of the aggravating element, *i.e.,* putting someone's life in jeopardy by use of a

18

dangerous weapon or device.

The Sixth Circuit has recognized this same requirement in connection with 18 U.S.C. § 2118, the pharmacy burglary statute which is modeled after 18 U.S.C. § 2113. In United States v. Mills, 1 F.3d 414 (6th Cir. 1993), Ronnie Mills and Velinda Naftzger robbed a pharmacy. During the high speed chase that followed, they hit an unmarked police car, injuring the officer. They were indicted on charges of burglary in violation of 18 U.S.C. §§ 2118(b). The indictment also alleged that during the commission of that offense, they put the officer's life in jeopardy by the use of a dangerous device, an automobile, thereby subjecting defendants to increased penalties under 18 U.S.C. § 2118(c)(1). Defendants were also charged with aiding and abetting the commission of those offenses under 18 U.S.C. § 2.

Mills, who was driving the getaway car, entered a guilty plea. Naftzger, who was a passenger in the getaway vehicle, went to trial and was convicted on multiple counts, including aiding and abetting the commission of a violation of 18 U.S.C. § 2118(c)(1). On appeal, she argued that there was no proof that she aided and abetted Mills' reckless driving. The Court disagreed. It noted:

> Naftzger maintains that there was no evidence that she did anything to help or encourage the assault/putting in jeopardy of Police Chief Minton. We disagree. Mills testified that as he sped away from Harlan, Naftzger looked through their loot and watched behind to see if they had lost the pursuing police officers. Clearly, Naftzger actively assisted Mills in fleeing, and the pair's reckless flight created a known risk of danger to Minton and others on the road. Hence, sufficient evidence supported the jury's finding that Naftzger aided and abetted Mills in conduct that knowingly jeopardized Minton's life.

1 F.3d at 420-21 (emphasis added).

In accordance with the holdings in Jones, Dinkane, and Mills, the Court concludes that Defendants cannot be convicted of aiding and abetting another person in causing Williams'

19

death unless the Government proves, beyond a reasonable doubt, that they not only participated in the commission of the armed bank robbery, but that they also participated in the killing of Daryl Williams, if not as principals, then as aiders and abettors of another person whose conduct caused Williams' death.  The question then becomes what is needed to establish that they aided and abetted another person in the killing of Daryl Williams.

Citing United States v. Conley, 131 F.3d 1387 (10th Cir. 1997), the Government argues that it is enough that Defendants helped to plan the armed robbery, participated in it, and were attempting to avoid apprehension when Williams was accidentally killed.  In Conley, defendants pled guilty to bank robbery and to using or carrying a firearm during a crime of violence.  When they were sentenced, the court imposed a two-point enhancement under § 3C1.2 of the Sentencing Guidelines for "reckless endangerment during flight."  On appeal, defendants challenged application of this enhancement, arguing that they should not be held responsible for reckless endangerment since they were not driving the getaway vehicle.

The Tenth Circuit disagreed.  Application notes for this guideline state that a defendant is responsible not only for his own conduct but also for "conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused."  U.S.S.G. § 3C1.2.  The court held that the enhancement can be applied so long as the sentencing court makes a specific finding that the defendant "actively caused or procured the reckless behavior at issue."  Conley, 131 F.3d at 1390 (citing United States v. Young, 33 F.3d 31, 33 (9th Cir. 1994)).  While it was not enough that reckless behavior was foreseeable, the court could consider "conduct occurring before, during, or after [a] high speed chase."  Id.

The district court noted that no credible evidence was presented at the sentencing hearing

concerning what transpired in the car during the high-speed chase.  However, there was evidence that defendants had planned an armed robbery that would involve eyewitnesses.  A quick getaway was therefore an integral part of the plan.  Furthermore, since the roads that morning were wet and icy, there was at least a possibility of reckless endangerment to others.  The presentence reports indicated that defendants admitted trying to avoid apprehension by outrunning authorities.  Other evidence in the record indicated that defendants both had guns, but the driver did not; the court therefore found that this supported a conclusion that they had the ability to control the driver's behavior.  Id. at 1391.  For these reasons, the Tenth Circuit concluded that the district court did not clearly err in holding defendants responsible for the driver's reckless driving.

The Government contends that this case is analogous to Conley in that the robbery took place in broad daylight, with eyewitnesses, making a quick getaway essential, and a risky high-speed police chase at least a strong possibility.  Defendants argue that Conley is inapplicable because it dealt with a sentencing enhancement and not with causation issues as they related to defendants' guilt or innocence.  While Conley may be somewhat instructive, it is certainly not binding on this Court.  Furthermore, in this Court's view, Conley goes too far in holding that mere participation in a robbery with a likelihood of a high speed chase is enough.  Other courts have required "some form of direct or active participation" in the reckless endangerment before § 3C1.2 can be applied.  See United States v. Chong, 285 F.3d 343, 346 (4th Cir. 2002)(quoting United States v. Cook, 181 F.3d 1232, 1235 (11th Cir. 1999)).  Likewise, in United States v. Lipsey, 62 F.3d 1134 (9th Cir. 1995), the Ninth Circuit held that it was not enough that there was a "community of interest among all three defendants in the car to escape from the police."  Id. at

21

1136.  The defendants who were passengers in the getaway vehicle had to do some affirmative act to aid, abet, counsel, command, induce, procure, or willfully cause the reckless conduct.  Id. See also United States v. Hall, 71 F.3d 569, 572 (6th Cir. 1995)(citing Lipsey and noting that the "'reasonable foreseeability' of a reckless getaway is not enough.").

Whether the Government seeks to hold Jabrown Parks and Chaz Frier criminally liable for Daryl Williams' death as principal actors or as aiders and abettors, it makes little difference in terms of the standard of proof.  They cannot be held criminally liable in either capacity simply because they planned and participated in a robbery in which it was foreseeable that a high speed chase would ensue, and were present in the getaway vehicle when the crash occurred.  The Government must prove that they engaged in some additional affirmative conduct that contributed to the fatal accident, either directly as principals or as aiders and abettors to another person whose conduct caused the fatal accident.  Only then can they be subjected to life imprisonment or death under § 2113(e).

### C.      Constitutionality of § 2113(e) as Applied to Jabrown Parks

Defendant Jabrown Parks argues that if the Court does not read *mens rea*, *actus reus*, and proximate cause requirements into § 2113(e), the Court should, in the alternative, declare the statute unconstitutional as applied to him, because there is not a sufficient causal connection between his conduct and Daryl Williams' death.  He claims that it would violate his due process rights to hold him criminally liable for Williams' death.

Defendant's alternative motion is limited to the subject of causation and, in light of the Court's holding that the Government will be required to establish that a Defendant's conduct

22

proximately caused Daryl Williams' death, the Court need not address Jabrown Parks'

alternative motion to declare § 2113(e) unconstitutional as applied to him.

**IV.     Motions for a Bill of Particulars**

Both Jabrown Parks and Chaz Frier have filed motions for an order requiring the

Government to file a bill of particulars setting forth the following information as it relates to the

alleged violation of § 2113(e) as set forth in Count 3 of the indictment:[10]

> (1)     What act did Defendant Jabrown Parks/Chaz Frier commit to support the allegation that he "killed" Daryl A. Williams, II?
> (2)     Did Defendant Jabrown Parks/Chaz Frier act as a principal or as an aider and abettor in the "killing" of Daryl A. Williams, II?
> (3)     Did Defendant Jabrown Parks/Chaz Frier act with "malice aforethought" in the "killing" of Daryl A. Williams, II? and
> (4)     If the government answers the foregoing question by stating that Defendant Jabrown Parks/Chaz Frier did not act with "malice aforethought," with what *mens rea* does the government claim he acted in the "killing" of Daryl A. Williams, II?

In <u>Russell v. United States</u>, 369 U.S. 749 (1962), the Supreme Court held that it is not

enough that an indictment parrots the relevant statutory language "unless those words of

themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the

elements necessary to constitute the offence intended to be punished." <u>Id.</u> at 765.  Parks claims

that even though the indictment tracks the relevant statutory language of § 2113(e), it is

insufficient to apprise him of the nature and scope of the accusations against him.

"The purposes of a bill of particulars are to inform the defendant of the nature of the

---

[10]  Federal Rule of Criminal Procedure 7(f) provides "[t]he court may direct the filing of a bill of particulars.  A motion for a bill of particulars may be made before arraignment or within ten days after arraignment or at such later time as the court may permit.  A bill of particulars may be amended at any time subject to such conditions as justice requires."

charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague and indefinite for such purposes." United States v. Birmley, 529 F.2d 103, 108 (6th Cir. 1976). See also United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir. 1993). Defendants argue that without the requested information, they are unable to adequately prepare a defense. They further contend that this information is necessary to avoid prejudicial surprise at trial, to clarify the issues in this case, and to avoid confusion and delay.

The Government denies that the indictment is insufficient to inform Defendants of the charges against them. It opposes the motions, claiming that, in reality, they are motions for discovery of evidence rather than motions for a bill of particulars and should, therefore, be denied. See United States v. Gabriel, 715 F.2d 1447, 1449 (10th Cir. 1983). As to the four questions raised in the motions, the Government responds: (1) defense counsel already has a good understanding of Defendants' roles in the crime, and evidence of the relevant acts committed by Defendants will be presented and developed at trial; (2) Defendants were both principals and aiders and abetters at various stages of the robbery and escape; and (3) pursuant to the Sixth Circuit's holding in Poindexter, the Government needs only show that Defendants intended to avoid apprehension. (Response Brief at 3).

A motion for a bill of particulars is a matter addressed to the sound discretion of the trial court. Will v. United States, 389 U.S. 90, 99 (1967). In this case, Defendants' motions raise issues identical to those already discussed in connection with the other motion. As the Court already held, in order for a defendant to be held criminally liable as a principal for Daryl

24

Williams' death under § 2113(e), the Government must prove that the defendant directly engaged in some conduct – above and beyond his participation in the robbery and his mere presence in the getaway vehicle -- that proximately caused Daryl Williams' death. Likewise, in order to be held liable as an aider and abetter, a defendant must have engaged in some conduct that aided and abetted the conduct of another person that proximately caused Daryl Williams' death.

Although the indictment does not allege any specific acts that Defendants did as principals or as aiders and abettors, the Court believes that this falls into the category of evidentiary material that the Government is not required to produce in response to a motion for a bill of particulars. See United States v. Ridley, 199 F. Supp. 2d 704, 708 (S.D. Ohio 2001)(noting that a motion for a bill of particulars is not to be used as a discovery device). The indictment charges Defendants in both capacities and this Memorandum and Order informs both the Government and Defendants of the proof required for a conviction under 18 U.S.C. § 2113(e).

## V.      Conclusion

Defendants' motion to read an *actus reus* requirement, a malice aforethought *mens rea* requirement, and a proximate causation requirement into 18 U.S.C. § 2113(e) (Record at 44) is **GRANTED IN PART AND DENIED IN PART**. As discussed above, the Government need not prove that a Defendant intended to kill Daryl Williams. The Government must, however, prove that a Defendant directly engaged in some affirmative conduct, above and beyond participating in the robbery and being present with Williams in the getaway vehicle, that proximately caused Williams' death, or that a Defendant aided and abetted another person whose

conduct proximately caused Williams' death.

Defendants' related motions for a bill of particulars on Count 3 of the indictment (Record at 31 and 32) are **DENIED**.

**IT IS SO ORDERED.**

Date: August 23, 2005

**/s/ John D. Holschuh**

John D. Holschuh, Judge
United States District Court